DAVOUST ET UX. *v.* MITCHELL ET UX.

[No. 769A131. Filed April 23, 1970.]

*John L. Carroll* and *Edwin W. Johnson* both of Evansville, for appellants.

*Ralph E. Moore,* Evansville, for appellees.

LOWDERMILK, C.J. —Plaintiffs, appellees herein, filed their complaint in two paragraphs for reasons of an alleged nuisance in keeping a dog pen, and for damage to their basement as a result of seepage of water, praying for an injunction and damages.

Appellants answered each of the paragraphs of the complaint under Rule 1-3 and the case was submitted to trial by the court without a jury.

The court entered judgment and ordered that appellees recover upon Paragraph I of their complaint and that the nuisance alleged be abated and the dog pen removed within sixty days, except the concrete slab in the pen was not to be removed, and further awarded appellees damages in the amount of $350.00. Appellants were awarded judgment on the second paragraph of appellees' complaint, that appellees take nothing thereby.

Appellants say of this case: "This is the saga of 'Queenie,' a small German Shepherd dog and his master Danny Davoust, an eight-year old boy, who lives with his mother, father, five brothers and sisters on a fifty foot lot in the city of Evansville, Indiana. Danny's father and mother are the

Appellants herein and Danny's next-door neighbors are the Appellees herein."

Prior to the summer of 1968, Queenie had been retained in a dog pen on the back side of appellees' lot and no complaint had been made by appellees. However, in the summer of 1968, appellants built for Queenie a new and more modern dog pen, flooring the same with a concrete slab. The pen was on the south side of the Davoust property, was 8½ feet in width and 14 feet long, and extended to within 10 inches from the Davoust's south property line. The pen was finished with an adequately high fence made of redwood on the front side and the other sides of the pen facing toward appellees' home was made of wire.

The dog pen as constructed lies about 10 feet from appellees' house and is opposite the side of their living room.

Although there was no objection to Queenie so long as she remained in her private domain on the back of appellants' lot, the waters became troubled when appellants asked appellees for permission to enter on appellees' property to erect a redwood board fence along the side of the dog pen. This permission was denied.

The pen was built August 18th, 1968, and on August 20, 1968, this action was commenced. The evidence was that the dog pen was completed in September of 1968, and Queenie was placed in the pen from time to time, primarily when she was in heat.

The evidence is disputed as to whether Mr. Mitchell, one of the appellees, smelled odor from the pen. However, he did so testify that he could smell the pen when he was out of doors and that the pen was not well kept and he had seen dog stools therein. He also said the dog barked quite often and had awakened him on several mornings.

Mrs. Mitchell, the other appellee, testified the dog barked whenever there was movement. She testified further that

when the dog was first penned there was an odor from the pen but she did not notice odor in the fall and winter.

There was evidence of other witnesses that the dog pen was not always kept clean and at times a few dog stools could be seen but that there was no particular odor from the pen. It was testified that this dog, and other dogs in the area, did bark.

A real estate broker with four years experience testified that, in his opinion, appellees' house had depreciated 5% in value because of the dog pen of the neighbor.

Appellants timely filed their motion for a new trial and alleged therein: (1) Damages are excessive; (2) error in the assessment of the amount of recovery being too large, the action being for injury to property; (3) the decision is not sustained by sufficient evidence; (4) the decision is contrary to law, and (5) error of law occurring at the trial in the court's permitting the realtor to testify as to damages without a proper foundation being laid therefor, over appellants' objection.

A memorandum in support thereof was that: (1) Actions or non-actions of the appellants do not constitute nuisance, either in law or in fact; (2) there is no prohibition in the state, county or city against keeping dogs on residential property and the court cannot restrain what is otherwise lawful; (3) the court is without power or authority to order the removal of the dog pen; (4) insufficient evidence to support an order of the court finding a nuisance and ordering the same abated; (5) there is no evidence on the question of damage as the same relates to the maintenance of such dog pen, and (6) the court permitted subjective evidence as to what is or is not offensive to a given witness, which is a purely subjective standard and invaded the province of the trier of fact.

Appellants' assignment of errors was that the trial court erred in overruling the motion of appellants for a new trial.

We shall first discuss assigned error number 1.

■ A nuisance, under Burns' Ind. Stat. § 2-505, is as follows:

"2-505 Nuisance.—Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action."

It is for the trial court to determine whether the amount of annoyance under all the facts and circumstances did or did not constitute a nuisance within the provisions of the statute.

Appellants cite and rely on *Meeks* v. *Wood* (1918), 66 Ind. App. 594, 118 N. E. 591. The court in that case said, at pp. 597, 598:

". . . The law is well understood that every man has the exclusive dominion and right to the free enjoyment of his own property to use it as he pleases, and that his neighbor enjoys the same rights and privileges with his property; consequently it is the duty of each to so use his own as not to injure that of the other. This duty, however, must be taken with some qualifications, for as it has been held: 'In the nature of things and of society, it is not reasonable that every annoyance should constitute an injury such as the law will remedy or prevent. One may therefore make a reasonable use of his right, though it may create some annoyance or inconvenience to his neighbor. . . . The law cannot take notice of such inconvenience, if slight or reasonable, all things considered, but applies the common-sense doctrine that the parties must give and take, live and let live; for here extreme rights are not enforceable rights— at any rate, not by injunction.' . . . There is another element to be taken into consideration in determining what shall constitute a nuisance, and that is the nature and characteristics of the person claimed to have been annoyed, as well as the nature of the instrumentality causing the annoyance. As was said in a well-considered case: 'In all such cases, the question is, whether the nuisance complained of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of *ordinary sensibilities*, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unrea-

sonable and in derogation of the rights of the complainant.' [Our italics.]"

Appellants further cite the case of *Owen et al.* v. *Phillips et al.* (1881), 73 Ind. 284, at 290:

". . . The facts which are relied upon ought to be so weighty, so material and so serious and important in character, as to leave no doubt that they do create an actionable nuisance, or the injunction should be denied."

Appellants next argue that under the holding of *Keiser et al.* v. *Lovett* (1882), 85 Ind. 240, the building of a stable is not a nuisance *per se* and that under the facts of this case the building of a dog pen is not a nuisance *per se*. Appellants further contend that the *Keiser* case held that an injunction will not be granted where the apprehended injury is merely contingent. It is true that appellee, Mr. Mitchell, testified that he and his wife slept upstairs in a bedroom directly over the appellants' dog pen and they feel like they will have some odor from the pen in summer.

Appellants' argument, as applied to the facts in the case at bar, is untenable for the reason that there is other, and we believe, sufficient evidence that is not contingent, upon which the court could and did render its judgment.

The trial court, like a jury, is entitled to take into consideration in weighing the evidence its own experience and the ordinary experiences in the lives of men and women.

There was evidence that Queenie, which is claimed to be a lap dog at the weight of 65 pounds, frequently barked in the mornings and awakened appellee, Mr. Mitchell, from his sleep and that she barked vigorously when it rained, as there was no evidence that there was a dog house to protect her from the elements. There was further evidence that frequently dog stools were seen in the concrete floored pen by appellees, their visitors, and employees in their home, from the living room window when the drapes were open.

Anything offensive to the senses so as to essentially interfere with the comfortable enjoyment of life or property is a nuisance. Certainly, it would be offensive to the senses for the appellees or other persons of their social level to be required to refrain from looking out their living room window because the drapes had to be closed and, too, it would be offensive to look out their living room window at dog stools and an unkept dog pen, and a dog taking the abuse of the rain in rainy weather.

It is also this court's opinion that when appellee is deprived of his required sleep and rest within the confines of his own home due to the barking of a penned dog located immediately outside his bedroom window, that this, too, constitutes an offense to the senses so as to essentially interfere with the comfortable enjoyment of appellee's life and property.

This court has heretofore said that the trial court could consider the ordinary affairs in the lives of men and women and although this court cannot and does not weigh the evidence, we are of the opinion that in deciding whether the evidence is sufficient to sustain the judgment, that we, too, may consider things that happen in the ordinary affairs of life and men.

The writer of this opinion, in considering things that happen in the ordinary affairs of life and men, has long since been of the opinion from such experience that the barking of a dog in the night time which keeps one awake night after night is a nuisance created on the part of the party harboring such dog.

From the evidence in the record and our consideration of the things that happen and may be considered in the ordinary affairs of life of men and women, we are of the opinion that the decision of the court was sustained by sufficient evidence and is not contrary to law.

Appellants next argue assigned error number 2, that the damages assessed are excessive.

Appellees prayed for $5,000 damages and the abatement of a nuisance. The court awarded $350 in damages.

Appellants contend that where a plaintiff has a choice of injunction or damages the prosecution of one excludes the other, and cite *American Furniture Co.* v. *The Town of Batesville* (1894), 139 Ind. 77.

Appellees did prove damage to their real estate. However appellees do not offer the real estate for sale and the court, having ordered the nuisance abated, there can be no recovery for a depression in the value of the property as soon as the nuisance is abated.

The measure of damages in a nuisance case is the injury to the use of the property, the depreciation in rental value. No such proof was submitted.

In the case of *Cleveland, etc., R. Co.* v. *King* (1900), 23 Ind. App. 573, 576, 55 N. E. 875, the court said:

"Where the wrong constituting the nuisance is not permanent, but may be discontinued, the measure of damages is not the depreciation in the value of the property [Citing cases.] * * * It not appearing that the nuisance in the case before us can not be abated (the presumption being that it will be abated), it must be held to be temporary within the meaning of the law. In such case, the measure of damages is the injury to the use of the property, the depreciation in the rental value."

In *Indiana Pipe Line Co.* v. *Christensen* (1919), 188 Ind. 400, 403, 123 N. E. 789, which was an action to recover damages for loss of cattle and permanent injury to a 700 acre farm occasioned by escape of oil from appellant's pipe line, the court said:

". . . In cases of this character damages can be recovered only to the date of the action, as there is a presumption that the cause which produces the damage will be removed by an abatement of the nuisance. If the nuisance is not abated, its continuance, resulting in a damage, is a new and separate injury which gives rise to a new cause of action."

The court, in the case of *Pittsburgh, etc., R. Co.* v. *Lamm* (1916), 61 Ind. App. 389, 400, 112 N. E. 45, said:

". . . If the nuisance has been abated, then the diminution of the rental value of the property during the time the nuisance existed would be the proper measure of appellee's damages." I.L.E., Vol. 22, § 3, *Nuisance*, p. 190.

Inasmuch as it is our opinion that the dog pen will be removed and the dog kept elsewhere, as ordered by the trial court, and the nuisance has heretofore been, or will be immediately after this opinion, abated, and the measure of the damages is the diminution of the rental value of the property during the time the nuisance existed, there being no evidence on the diminution of the rental value, we are of the opinion that the court erroneously awarded $350 in damages.

Appellants next argue assigned error number 3, which is that there was an error of law occurring at the trial, excepted to by appellants. The claimed error was that a witness was permitted to testify as an expert as to his opinion of the damages in value to appellees' residence as a result of the construction of the dog pen. We have adequately covered this assignment of error by this opinion as it pertains to assignment of error number 2, and will not discuss it further.

We have indicated the character of the evidence produced at the trial and that the court has concluded therefrom that the nuisance complained of and the unkempt condition of the dog pen was of such a character as would materially interfere with and affect the ordinary comforts of living on the part of normally constituted people and especially the appellees. The trial court was fully warranted by the evidence in reaching such conclusion.

We have indicated that the damages assessed in the amount of $350 were erroneously assessed. We have the right and authority under the Indiana Rules of Procedure, effective January 1, 1970, to correct the judgment and in our opinion a correction of the judgment will give

substantial justice to the parties and eliminate expense and necessity of a new trial.

Said Rules, AP. 15 (M) Order or relief granted on appeal reads:

"An order or judgment upon appeal may be reversed as to some or all of the parties and in whole or in part. The court, with respect to all or some of the parties or upon all or some of the issues, may order:

(1) * * *; (2) * * *; (3) * * *; (4) * * *;

"(5) in the case of excessive or inadequate damages, entry of final judgment on the evidence for the amount of the proper damages, a new trial, or a new trial subject to additur or remittitur; or

"(6) grant any other appropriate relief, and make relief subject to conditions.

"* * * A judgment may be affirmed on conditions. * * *"

The judgment of the trial court is hereby affirmed on the condition that the trial court strike from its judgment and hold for naught the award of $350 damages to the appellees.

The court further decrees that the appellants shall pay the costs of this action.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 257 N. E. 2d 332.